Gray F. MADISON, Sr., and Elizabeth B. Madison, husband and wife, Plaintiffs,

v.

**DESERET LIVESTOCK COMPANY, a Utah Corporation, Defendant.**

No. C 75–126.

United States District Court, D. Utah, C. D.

July 14, 1976.

James P. Cunningham, Phoenix, Ariz., John L. Black, Salt Lake City, Utah, for plaintiffs.

Raymond M. Berry, Salt Lake City, Utah, for defendant.

## MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

ALDON J. ANDERSON, District Judge.

This memorandum opinion is filed in support of the court's order of June 30, 1976, granting defendant Deseret Livestock Company's motion for summary judgment.

The facts of this case are simple. Plaintiff Gray F. Madison, Sr. went to the defendant's ranch at the invitation of defendant to hunt pheasants. Plaintiff and defendant had no business relationship, and plaintiff's purpose in going to the ranch was purely social and recreational. While hunting on the ranch, plaintiff walked into a sagging power line that belonged to defendant and was severely injured. A fire had burned the cross arm upon which the line was suspended, allowing the line to sag within a few feet of the ground. In the expert opinion of local power company personnel and plaintiff's expert, Dr. Truet B. Thompson, salt dust had accumulated on the cross arm and, when dampened by a rainstorm, acted as a conductor. This resulted in a leakage of electricity from the lines and caused the fire.

Defendant's motion is based on the argument that the undisputed facts show that it breached no duty to plaintiff. It contends that plaintiff was a licensee to whom it owed only a duty to refrain from affirmatively injuring and to warn of known dangerous conditions. Plaintiff asserts that he was more than a mere licensee because he was expressly invited to the premises, and that defendant owed him a duty of due care.

■ It is undisputed that plaintiff entered upon the ranch for social and recreational purposes and that he had no business relationship with defendant. This fact makes plaintiff a licensee. *Tempest v. Richardson,* 5 Utah 2d 174, 299 P.2d 124 (1956); see Restatement (Second) of Torts § 330 (Comment *h*) (1965). With respect to a social guest's status as a licensee, William Prosser explains:

> Thus nearly all of the decisions are agreed that a social guest, however cordially he may have been invited and urged to come, is not in law an invitee . . . . The guest is legally nothing more than a licensee, to whom the possessor owes no duty of inspection and affirmative care to make the premises safe for his visit. . . . The reason usually given is that the guest understands when he comes that he is to be placed on the same footing as one of the family, and must take the premises as the occupier himself uses them, without any inspection or preparation for his safety; and that he also understands that he must take his chances as to any defective conditions unknown to the occupier, and is entitled at most to a warning of dangers that are known.

W. Prosser, Law of Torts § 60 (4th ed. 1971). The rationale of the legal rules applying to licensees is set forth by Prosser in the same section.

> He receives the use of the premises as a gift, and comes well within the old saying that one may not look a gift horse in the mouth. He has no right to demand that the land be made safe for his reception, and he must, in general, assume the risk of whatever he may encounter, and look out for himself. The permission to enter

carries with it no obligation to inspect the premises to discover dangers which are unknown to the possessor, nor, a fortiori, to give warning or protection against conditions which are known or should be obvious to the licensee.

*Id.* Since plaintiff is within the classification of licensee, his expectation that the premises be inspected and maintained in a reasonably safe condition for his protection is unwarranted.

■ Although there appears to be a trend in some parts of the country to impose upon landowners a duty of due care under the circumstances toward all who are lawfully on the land, the duty of a landowner in Utah is still defined by the status of the person on his land. *Schlueter v. Summit County, Town of Kamas,* 25 Utah 2d 257, 480 P.2d 140, 141 (1971). In that case, the Utah Supreme Court reaffirmed its adherence to the common law rule:

> The plaintiff contends that the duty which a landowner owes to others should be the same whether the other be a guest, business invitee, licensee, or trespasser, to wit: reasonable care under the circumstances.
>
> We do not agree with this contention. We think a landlord fulfills his duty to a guest or licensee when he refrains from wilfully causing injuries to the guest or licensee or from permitting conditions to exist from which he reasonably should foresee that injury might result.

480 P.2d at 141. Thus the law in Utah is consistent with the views expressed by Prosser. In *Wood v. Wood,* 8 Utah 2d 279, 333 P.2d 630 (1959), the Utah Supreme Court described the duty of a landowner to a licensee as "limited to refraining from willful injuries and from permitting conditions to exist which might be considered as traps." The court also quoted a Restatement of Torts section as a proper statement of a landowner's duty toward licensees.

> A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

> (a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and
>
> (b) invites or permits them to enter or remain upon the land, without exercising reasonable care
>
>> (i) to make the condition reasonably safe, or
>>
>> (ii) to warn them of the condition and the risk involved.

Restatement of Torts § 342. The only particular in which the Utah Supreme Court has departed from this section relates to the possessor's appreciation of the risk of harm. As is evident from the *Schlueter* case, a landowner can be liable for harm caused by a known condition if the risk of harm was reasonably foreseeable; it is not necessary that the landowner actually realize that the condition involves an unreasonable risk of harm. Aside from that variation, the above section is the law in Utah. Plaintiff's argument that section 342 of the Second Restatement of Torts is now the law in Utah is unsupported in case law and otherwise unpersuasive.

■ Defendant argues that it cannot be liable to plaintiff because his injury was caused by a condition unknown to defendant's agents. Because the condition was unknown, defendant contends, there was no duty to make the condition reasonably safe or to warn plaintiff. This argument reflects the words of Prosser that the licensee "must take his chances as to any defective conditions unknown to the occupier." W. Prosser, *supra,* § 60. The broad fault principle expressed in Prosser, the Restatement, and the Utah cases is that it is unreasonable for a landowner to know of a condition on his land which he ought reasonably to perceive would cause injury to a person exposed to the condition but do nothing about it. The failure to correct the condition or warn persons on the land is negligence. But the predicate of liability in every case is knowledge of the condition. If a condition involving an unreasonable risk of harm existed on the ranch but was unknown to

defendant's agents, defendant did not owe plaintiff a duty to make safe or warn. Likewise, if a condition existed and was known to defendant's agents, but did not involve an unreasonable risk of harm, defendant did not have a duty to make safe or warn. Depending on how the condition is defined, each of these propositions applies.

Plaintiff seeks to define the condition as the presence of the transmission line on the property and argues that the case of *Brigham v. Moon Lake Electrical Ass'n*, 24 Utah 2d 292, 470 P.2d 393 (1970) places a duty of due care on anyone who transmits electricity through high tension wires. The *Brigham* case concerned a power company and is not authority for the proposition that the duty of a landowner toward persons on his land is changed because electrical transmission lines are one of the artificial conditions on his property. *Brigham* does mean that there is an inherent risk of harm in high tension wires, but it does not indicate that such risk is an unreasonable one. For its part, the court does not believe that the mere presence of the electrical transmission lines on defendant's ranch created an unreasonable risk of harm to plaintiff. Furthermore, defendant had no reason to believe that plaintiff would not discover the condition, i.e., the presence of the poles and lines. Thus the court holds that no duty of due care arose from the mere presence of the lines on the property.

Plaintiff alleges that defendant failed to properly construct and maintain the electrical facilities, but has not come forward with facts which create a genuine issue of fact in that respect. The opinion of plaintiff's expert, Dr. Truet B. Thompson, that the cross arm was not strong enough to hold up the vertical load, is conclusory, totally unsupported by facts, and insufficient under Rule 56(e) to show that there is a genuine issue for trial. Thus, even if defendant had a duty to properly construct and maintain the transmission line, plaintiff has failed to come forward with specific facts tending to support the claimed breach of that duty.

It is also possible to regard the accumulation of salt dust on the cross arm, with the attendant possibility of its becoming a conductor during a rainstorm, as the condition. Certainly that would be the case if the line had fallen on plaintiff. But again there is no assertion that defendant's agents knew of the accumulation, and, even had it come to their attention, there is evidence in the file establishing their ignorance of the conduction phenomenon. Thus, the risk of harm was not reasonably foreseeable, even if the accumulation had been detected.

This leaves the sagging wire as the condition which created the unreasonable risk of harm to plaintiff. There is no doubt that anyone who knew that an electric line was down would also realize that it involved an unreasonable risk of harm. The dangerous qualities of electricity are a matter of common knowledge. If defendant's agents knew that the power line was sagging, they had a duty to put the wire back up or warn the plaintiff about it. In other words, from the knowledge of the sagging line would arise a duty of due care under the circumstances; absent such knowledge, defendant owed plaintiff no duty with respect to the sagging line. The inquiry before the court, therefore, is whether there is a genuine issue of fact as to defendant's knowledge of the condition.

The uncontested affidavit of defendant's agent Don Taylor, the ranch foreman, states that he did not know of the sagging line prior to the accident. He states that he had not seen it nor had any other employee mentioned that they had seen the line down. Certain facts strongly support this testimony. The field where the transmission line was located had not been in use for some time and no livestock were present in the area. The pumps serviced by the line had not been used for a few months. According to power company personnel and plaintiff's expert, Dr. Thompson, the fire which burned the cross arm and caused the line to fall probably occurred during the last rainstorm prior to the accident. If their theory is correct, the line would have

been down just a few days at the time plaintiff encountered it. The fact that the burned cross arm and pole were clearly visible from the highway leading from one part of the ranch to the other does not lead to the inference that the cross arm and sagging wire were noticed. Such an inference is unfounded, particularly in view of the fact that they were just as visible to the hunting party from the road and even more so from the field where they were hunting, yet none of the hunting party noticed the condition of the line. Since the condition was plainly visible, plaintiff was just as likely to notice it and appreciate the risk of harm as any agent of defendant.

One fact is particularly significant. Mr. Taylor knew that the hunting party was going to hunt in the field where the line was located. The party consisted of plaintiff and several principals of defendant, including the president. These men who were associated with the defendant were subjected to the same risks as plaintiff in going into the field. This case is thus a classic example of the rationale behind the licensee rule. As to unknown risks, the licensee takes the land on the same footing as the possessor, or its agents in this case. He must take the land in the condition in which the occupier uses it, without special preparation for his safety. Against the inferences to be drawn from these facts, plaintiff offers the affidavit of Mr. Calame, a private investigator who interviewed Mr. Taylor a few months after the accident. He states that Mr. Taylor told him that the sagging wire had not been discovered until the accident occurred. But he also reports that in response to a question whether the wire had been down a few weeks, Mr. Taylor responded "it hadn't been but a few days." Without Mr. Taylor's other statements, the logical inference to be drawn from this response is that he knew when the line had fallen and therefore knew it was down prior to the accident. Mr. Taylor explains the remark as the result of his discussion with power company personnel about the cause of the fire and when it probably occurred. Since the last rainstorm occurred a few days prior to the accident,

Mr. Taylor avers, he assumed that the fire occurred then. He states that his response to Mr. Calame's question merely reflected that understanding. This explanation of the remark is consistent with Mr. Taylor's other statements.

Plaintiff's problem in this regard is that he has produced no evidence of defendant's agents knowing of the sagging wire prior to the accident. Plaintiff has not produced specific facts showing that there is a genuine issue for trial. Defendant is not required to prove the negative, i.e., that its agents had no knowledge of the condition. And plaintiff is not entitled to go to trial on the issue without at least a minimal showing of facts from which the inference of knowledge might be drawn. The court concludes that there is no genuine issue of fact with respect to the defendant's knowledge of the sagging wire.

■ Since plaintiff was injured upon encountering an unknown danger, it cannot be said that defendant breached a duty owed to plaintiff. He owed no duty to plaintiff, a licensee, to inspect the premises for unknown dangers, no duty to warn of unknown dangers, and no duty to make safe unknown dangers. Plaintiff took his chances as to defective conditions unknown to the defendant, and must suffer the consequences of this tragic accident without legal redress against the defendant.

■ Plaintiff asserts other arguments to persuade the court that defendant owed a duty to him which he is entitled to attempt to prove was breached. Plaintiff argues that the construction of the power line and the furnishing of electricity by means of the line was an activity on the part of defendant, i.e., active conduct. Prosser states that as to active conduct of the landowner there is an obligation on his part to exercise reasonable care to protect licensees. W. Prosser, supra § 60, at 379. He also states, and the court agrees, that "[a]ctive negligence, to create liability to a licensee, must be more than prior creation of a condition." *Id.* at 97. The chain of events that created the condition which in-

jured plaintiff involved no active conduct on the part of defendant, so plaintiff was not injured by defendant's active conduct.

 Plaintiff's next argument is that a duty of due care arises because the condition which harmed plaintiff involved electricity. The court has considered this argument carefully, but has determined that under the circumstances of this case the law with respect to licensees is the controlling rule to be applied, notwithstanding the involvement of electricity. There are several reasons for this determination. First, a private landowner is in a different position than a power or telephone company. A power company strings its wires through many public areas and across private property and thus exposes the public and property owners to the danger inherent in high tension transmission lines. A landowner who constructs a transmission line across his land does not expose the public to any risk and, most significantly, he and his family or agents are exposed to the same risk of harm to which anyone coming on the land is exposed. Moreover, a power company is in the business of supplying electricity, and is presumed to expertly go about its business. There is consequently no basis for holding that a landowner's duty toward licensees is increased to a duty of due care simply because electrical lines are present on the land. *See* 26 Am.Jur.2d, *Electricity, Gas, and Steam* § 68. *But see id.* § 129. Second, the accident that caused the wire to sag in this case was produced by a natural phenomenon unknown to the defendant's agents which had never occurred before and could not have been reasonably anticipated by them. *American Jurisprudence* suggests that in such a case, again with respect to power companies, that the power company is absolved of liability and further states that "if an electric wire sags or breaks without any negligence on the part of the company maintaining the wire . . . there is no basis for recovery against the company." *Id.* § 126. This rule applies, of course, only if the power company is ignorant of the sag or break. The rule appears to be consistent with the law of Utah. In *Brigham v. Moon Lake Electric Ass'n,* 24 Utah 2d 292, 470 P.2d 393, 395 (1970), the court stated:

> The amount of care to avoid negligence always varies with the risk of harm which is known or under the circumstances ought to be known to exist.

And in *Schlueter v. Summit County, Town of Kamas,* 25 Utah 2d 257, 480 P.2d 140, 141–42 (1971), the court premised the liability of a landowner to licensees on permitting conditions to exist "from which he reasonably should foresee that injury might result." Since the sagging line that caused the injury in this case fell without any negligence on the part of defendant, since defendant's agents could not have reasonably foreseen the possibility of its sagging, and since the defendant's agents did not know of the sagging line, there is no basis for recovery against defendant.

 Plaintiff also seeks to recover on a theory of strict liability. Under the law of Utah, however, the claim based on that theory must be dismissed. In *Brigham v. Moon Lake Electric Ass'n, supra,* the Utah Supreme Court held that a power company is not strictly liable for injuries caused by its transmission lines. There is nothing in the law of Utah that would place a greater responsibility on a landowner than on a power company, particularly in view of the fact that the landowner's lines are on his land and do not expose the public to the danger inherent in high tension transmission lines as does a power company. Consequently, the court concludes that it is the law in Utah that a landowner is not strictly liable for injuries resulting from electrical transmission lines that belong to him and are on his property.

 Plaintiff's final argument is that Utah statutes, regulations, and various codes adopted therein define defendant's duty in this case. Plaintiff first cites rules of the Public Service Commission of Utah which adopt the National Electrical Safety Code as the minimum standards to be followed by all utilities operating in the State of Utah. Plaintiff then argues that defendant violated the Code in several respects, including failure to systematically inspect

the transmission line and improper clearance and improper cross arm construction. There are a few difficulties with this position. First, the rules of the Public Service Commission and the incorporation of the National Electrical Safety Code therein apply by their terms only to public utilities. Defendant is not a public utility, and the court has already expressed its opinion that it should not be treated as a utility. Plaintiff's characterization of the rules and code as "the law of Utah" is therefore correct only insofar as utilities are concerned. Second, plaintiff has come forward with no facts tending to create an issue as to whether defendant violated the code in this instance. It was not defendant's fault that the line was down, and defendant had no knowledge of the line's fall. Thus plaintiff's argument that the clearance requirements and cross arm strength requirements were violated is unfounded. Plaintiff also argues that the Utah statute setting forth minimum standards for electrical installations, Utah Code Ann. §§ 58–36–20 *et seq.* (1974), is binding on defendant and adopts the National Electrical Safety Code. The court agrees that this Act is not applicable solely to utilities, but finds plaintiff's reliance on the Act as a basis for his claim of negligence misplaced. The Act is part of a licensing act for electricians. It requires that "all installations of electrical equipment shall be reasonably safe to persons and property . . . ." *Id.* § 58–36–21. The phrase "reasonably safe to persons and property" is stated to mean "safe to use in the service for which the installation or equipment is intended without unnecessary hazard to life, limb, or property." *Id.* Plaintiff in this case was not using the electrical installation in the use for which it was intended, so he is not within the class of persons intended to be protected by this Act. This is not a technical construction of the Act; the Act was simply not meant to cover the situation in which plaintiff found himself. Furthermore, the Act does not incorporate the National Electrical Safety Code in the sense that it makes the Code the law of Utah; it merely says that compliance with the Code is prima facie evi-

dence that the installation is reasonably safe to persons and property. *Id.* Finally, the court again finds that plaintiff has come forward with no evidence that the Code, even if applicable, or this Act, was violated by defendant in this instance. For these reasons, the court finds no basis in defendant's argument that these statutes, rules, and the Code control the question of liability in this case. By this the court does not suggest that private landowners can string high voltage wires across their property in any manner without incurring liability for injuries caused thereby. If an electrical installation is installed in such a manner as to create an unreasonable risk of harm which the landowner ought to reasonably foresee, then the Utah cases and section 342 of the Restatement of Torts imposes liability on that landowner. This decision is an expression of the court's opinion that under the facts of this case the defendant is not within the strictures of any Utah law which would allow this court to permit a jury to consider the imposition of liability upon defendant for plaintiff's injury. Wherefore,

IT IS HEREBY ORDERED that defendant Deseret Livestock Company's motion for summary judgment is granted.